J-S19018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TERMINATION OF PARENTAL RIGHTS TO L.J.A., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.K., FATHER | : : : : : : : | |
| | : | No. 294 MDA 2023 |

Appeal from the Decree Entered January 12, 2023
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2022-01554

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: AUGUST 1, 2023**

K.K. ("Father") appeals from the decree terminating his parental rights to L.J.A. ("Child"). Father's counsel has filed an **_Anders_**[1] brief and application for leave to withdraw. For the reasons set forth below, we affirm the decree and grant counsel's application to withdraw.

Child was born to K.K. and E.A. ("Mother") in 2021. Decree, 1/12/23, at ¶ 1. The Lancaster County Children and Youth Social Service Agency ("the Agency") became involved when Mother began experiencing withdrawal symptoms during labor and Child began experiencing withdrawal symptoms hours after her birth. Trial Court Opinion, filed Jan. 12, 2023, at 2 (unpaginated).[2] Mother was incarcerated for drug use shortly thereafter, and

---

[1] **_Anders v. California_**, 386 U.S. 738 (1967).

[2] The trial court relied on this opinion to satisfy its obligation under Pa.R.A.P. 1925(a).

after Child was released from the hospital, Child was placed with foster parents who are the adoptive parents of one of Mother's other children. Child's older sister, L.M.A., was removed from Mother's care at the same time.

The court adjudicated the children dependent in April 2021. Father did not attend the adjudication and disposition hearing. "Father's reunification objectives were to be financially stable to provide for himself and his children, obtain and maintain a home free and clear of hazards for himself and his children, to maintain an ongoing commitment to his children, and to undergo an assessment once paternity was established." *Id.* at 3. Father's paternity was confirmed in June 2021. The court held permanency review hearings in early and mid-2022, at which it found Father had been minimally compliant with his reunification objectives and changed Child's permanency plan from reunification to adoption. *Id.* at 5-6.

The Agency filed petitions to terminate the parental rights of both parents as to both Child and her older sister, L.M.A., in June 2022. The court held a hearing on the petitions in December 2022. Relevant to the termination of Father's parental rights to Child,[3] the court heard the testimony of Father; paternal grandmother, R.A.; and a caseworker, Krista Rankin. The court summarized the relevant evidence presented at the hearing as follows:

> At the time of the hearing, Father was incarcerated since early November 2022 for driving with a suspended license. Father testified he had been employed full-time and providing child support until that point; he did not report income to the Agency

---

[3] Mother consented to Child's adoption.

or alert them he was paying support. Father agreed he had not visited Children since August 2021 and had not communicated with the Agency about changing visitation to fit his work schedule. Father had undergone a biopsychosocial evaluation that referred him for a parenting capacity evaluation, which Father did not complete. Father testified that he had contacted the evaluator's officer personally and was told the evaluation would cost $2,000; he did not discuss the prohibited cost with his caseworker, who testified at the hearing she had previously told Father he did not have to pay for the evaluation.

Father had not engaged in mental health treatment and had not been drug screened since 2021 due to the Agency's difficulty reaching him. He resided in housing inappropriate for Children until his November 2022 incarceration and had never participated in parenting classes because of incomplete evaluations. Father testified he was not sure why he wanted his parental rights to Children, except that he did not trust the system because the Agency had moved L.M.A. to a home where there were sexual allegations.

Father presented Children's paternal grandmother, [R.A.], as a potential kinship placement for Children. [R.A.] had been unavailable to take Children when first asked by the Agency in August 2021. Once she became available, she did not pursue kinship placement until recently. [R.A.] testified she could not be an immediate kinship placement because she had just met [Child] the day of the hearing and needed to start small to get "to that choice." She testified she wanted visits with Children and the chance to be there for Children.

*Id.* at 7-8.

The court found termination of Father's parental rights to Child was warranted under Sections 2511(a)(1) and 2511(a)(2). It found Father's only role in Child's life for the preceding 16 months was "one of mere financial obligation." *Id.* at 11. The court noted Father had not visited Child since August 2021 and had made no efforts to do so since October 2021. It found Father had "made little to no progress on any of his goals in the [18] months

because he failed to communicate with the Agency or engage with his permanency plan objectives." ***Id.*** It observed that Father reported inappropriate housing for the duration of the case. It added that while he had completed an initial biopsychosocial evaluation, he did not follow through with mental health treatment, comply with drug screening, or complete the intake paperwork and evaluations needed for parental education. ***Id.*** at 11-12. The court noted that as of the termination hearing, Father was again incarcerated. ***Id.*** at 11. The court concluded, "Father's instability and lack of personal commitment to [the c]hildren show a refusal by him to perform his parental duties to [the c]hildren for the last [21] months." ***Id.*** at 12. It further concluded that Father's "lack of effort to perform essential duties or ask how [the c]hildren are doing . . . prove[s] by clear and convincing evidence that Father's refusal to provide care will not be remedied." ***Id.*** at 14.

Next, the court concluded that termination of Father's parental rights was warranted under Section 2511(b), as termination would best serve Child's welfare. ***Id.*** at 16. It stated,

> The court heard testimony . . . about how [Child] has lived in a potentially permanent resource home since March 2021 and considers her resource parents to be [her] mother and father. [Child] has family and church supports in her placement. [Child] has been in Agency care since days after her birth in March 2021, and Father has no parental bond to speak of. His paternity was not confirmed until June 2021, and his last contact with [Child] was in August 2021. The court did not hear testimony regarding [Child]'s attachment to Father, and Father did not testify he loved [Child], or that she had a relationship with him.

***Id.*** The court accordingly entered a decree terminating Father's parental rights to Child, and Father appealed.

As stated above, counsel filed an ***Anders*** brief and application for leave to withdraw as counsel. We must pass on the merits of the request before reaching the substantive merits of the appeal. ***In re Adoption of B.G.S.***, 240 A.3d 658, 661 (Pa.Super. 2020).

> To withdraw pursuant to ***Anders***, counsel must comply with the following requirements:
>
> > 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the ***Anders*** brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.
>
> Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights.
>
> Additionally, our Supreme Court has sent forth the following requirements for ***Anders*** briefs:
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;
> >
> > (2) refer to anything in the record that counsel believes arguably supports the appeal;
> >
> > (3) set forth counsel's conclusion that the appeal is frivolous; and
> >
> > (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.***

The ***Anders*** brief states that counsel was unable to identify any non-frivolous issues for appeal and sets forth counsel's belief that the appeal is wholly frivolous. Counsel has summarized the pertinent facts, giving citations to the record, and has outlined the applicable law. Counsel has attached to her application a copy of the letter she sent to Father on March 31, 2023, enclosing both a copy of the application and a copy of the ***Anders*** brief, and advising Father that he has the right to retain another attorney or represent himself and raise any additional issues. As of July 1, 2023, Father has not responded.

We find counsel has substantially complied with ***Anders*** and its progeny, and therefore turn to our own independent review of the record "to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Id.*** at 662 (citation omitted).

We review a court's decision to terminate parental rights for an error of law or abuse of discretion. ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). "We accept the findings of fact and credibility determinations of the trial court if the record supports them." ***Id.***

The party requesting termination of parental rights "bears the burden of establishing grounds for termination by clear and convincing evidence." ***Id.*** at 473 (internal quotation marks and citation omitted). This calls for evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (citation omitted). The party must carry its burden to prove

- 6 -

grounds for termination under any subsection of Section 2511(a) of the Adoption Act, and whether termination serves the best interest of the child, as set forth in subsection (b). *See In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007).

Here, the court first found the Agency had presented clear and convincing evidence that termination was warranted under both subsections (a)(1) and (a)(2). Subsection (a)(1) provides:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). In other words, subsection (a)(1) requires clear and convincing evidence "that the parent's conduct during the six months preceding the filing of the termination petition demonstrate . . . a refusal or failure to perform parental duties." *In re Adoption of K.C.*, 199 A.3d at 473-74. A parent's obligation to perform parental duties requires affirmative action rather than "a merely passive interest in the development of the child." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003)). It "encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child." *Id.* (quoting *In re C.M.S.*, 832 A.2d at 462). Nonetheless, "[t]he rights of a parent shall not be

terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care **if found to be beyond the control of the parent**." 23 Pa.C.S.A. § 2511(b) (emphasis added).

The challenge to the sufficiency of the evidence to the termination of Father's rights pursuant to subsection (a)(1) is frivolous. According to the record, for a period of at least six months preceding the filing of the petition, Father refused or failed to perform parental duties. Father has never directly cared for Child. He did not obtain suitable housing or comply with the other directives that would allow him to care for Child. There is no evidence that it was not within Father's power to comply with these objectives in the six months preceding the filing of the petition, or even after the filing of the petition, before Father was incarcerated. Moreover, Father has not visited or otherwise associated with Child since August 2021, when Child was only a few months old, nearly a year before the petition was filed. There is no reasonable basis in the record on which to challenge the finding of termination under subsection 2511(a)(1).

As the termination under subsection 2511(a)(1) are not assailable on this record, we need not consider the court's alternate finding under subsection (a)(2). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*) ("we need only agree with [the trial court's] decision as to any one subsection [of Section 2511(a)] in order to affirm the termination of parental rights").

We turn to the court's finding that termination best suits "the developmental, physical and emotional needs and welfare of the child." **See** 23 Pa.C.S.A. § 2511(b). This includes both an analysis of the child's bond with her biological parent, if any, and an assessment of her pre-adoptive home, with consideration of the child's "developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." **Interest of K.T.**, --- A.3d ----, Nos. 37 & 38 WAP 2022, 2023 WL 4092986, at *18 (Pa. filed June 21, 2023).

We again find no basis in the record on which to contest the court's finding that termination is in Child's best interest pursuant to subsection 2511(b). It is undisputed that Child has lived in her pre-adoptive home since days after her birth in Spring 2021 and considers her pre-adoptive parents to be her mother and father. Meanwhile, the evidence does not suggest that Father or R.A. have any parental bond with Child. Allowing for Child's adoption by her foster parents would therefore best serve her need for "love, comfort, security, safety, and stability." **Id.**

Our independent review of the record reveals no non-frivolous basis on which to challenge the trial court's decision to terminate Father's parental rights to Child. We therefore affirm the decree and grant counsel's application to withdraw.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/01/2023